Blind. We will begin with argument in McLeod v. the Jewish Guild for the Blind. Good morning, your honors, and may it please the court. My name is Adrienne Koch from the firm of Katsky Korins, here representing the plaintiff appellant Easter McLeod. In granting summary judgment dismissing McLeod's hostile work environment claim, the district court simply ignored a whole series of incidents that were probably the most significant and certainly the most recent aspect of the harassment that Ms. McLeod experienced. Her job duties included helping developmentally disabled and visually impaired clients use the restroom, and the record reflects that on about a dozen occasions her supervisor, Donald Detmer, came into the restroom while she was there doing her job, proceeded to the urinal, unzipped his trousers, and urinated right there in her presence when her job responsibilities made it impossible for her to leave. Did she say that in her response to the summary judgment motion? Your honor, in response to the summary judgment motion, she first asked for more time. Her time to respond came before that was ruled on, and so she submitted a response in which she said essentially, I'm not quite sure what's expected of me, but I'm going to do the best I can. I had no reason to lie in my complaint. In the complaint, these, what we refer to as bathroom incidents, are listed as part of the harassment that Ms. McLeod experienced. So it's thin. I was surprised. I have her response. It's like a 10-page response in opposition to summary judgment. Right. And it's very detailed, and she doesn't mention this at all. What would be the reason she wouldn't mention these more recent occurrences with Detmer? One of the things that she begins with, your honor, is she begins by saying something to the, I don't have the exact words, but it's something to the effect of, I don't understand why I have to keep repeating myself. I had no reason to lie in my complaint. So admittedly, it's thin, but what it indicates is that she didn't understand that she needed to say again things that she had already said. She testified extensively about it at deposition, and I would also remind the Court that under this Court's precedent, if she had said nothing, it still would have been the district court's obligation not to simply take JGB's Rule 56.1 statement as fact, which is essentially what the district court appears to have done, but to search the record to make sure that what JGB was saying was actually supported by the record. And if the district court had done so, we respectfully submit that it could not possibly have found that there was no issue of fact as to whether the harassment continued into the 300-day Title VII limitations period, or whether it was sufficiently severe or pervasive. It's no surprise that JGB attempted essentially to run away from this set of allegations in its papers, because this is severe. We're talking about a man walking into the bathroom when she can't leave, and she's there with a person who's visually impaired, unzipping his trousers and urinating not once, not twice, but 12 times, including after he'd been told not to, and including after her formal complaint to JGB. There's no evidence that any of JGB's other male employees ever did this. Only him. I'm sorry? How long a period was it? Was the 12 times? I don't believe the record is clear as to when it began, but it began at some... The harassment itself spanned a period from about 2005 through 2013. These bathroom incidents, as we euphemistically call them, continued into the end of 2013, and they began sometime during the period when the various other harassment was occurring. The comments suggesting that she had a second job... That's eight years then, right? It might not have been the entire eight years. The bathroom incidents, I believe, started a little bit later on in the period. So there was a morphing, an escalation, we submit, of the harassment. It began with the comment, you're trying to show me your ass for points. And then the comment, you like a lot of juice on your sausage. And then the comments about her footwear suggesting that she might have a second job as a prostitute or a stripper. And then the bathroom incidents, which we believe overlapped with the stripper slash when they occurred. She just said over the years. Was the plaintiff's deposition available to the district court to search? Was that presented as part of somebody's position? In fact, what happened, as near as I can tell from the record, and I obviously wasn't her counsel below, JGB was directed by the district court to supply Ms. McLeod with a full copy of her deposition. As near as I can tell, that never happened. And in fact, I asserted that in my brief, and JGB didn't deny it. I'm not sure whether she had it. I'm trying to find out whether the judge had it. Excerpts. As you correctly point out, the judge is supposed to, in certain circumstances, search the record. But the full discovery record is not usually available to the judge at all, unless one of the parties presents it. And I'm just trying to find out, is there anything in the record, in either party's submission, that puts those deposition excerpts that you're now relying on before the district judge? The deposition excerpts that I'm relying on were before the district judge. They're the only ones I had available to me. They're in the record on appeal, and they were submitted by JGB, and they skip around a lot in ways I would suggest are a little curious. They skip ten pages, they skip four pages, sometimes they skip things in the middle of a discussion. So we actually don't know what all Ms. McCloud's testimony is, but even from what they submitted, we can tell that these bathroom incidents occurred into the 300-day period, and that they occurred after her complaint to JGB, and that they were part of a pattern of harassment that began in 2005 and took various phases. Her answer though, and we don't know whether the district court got this, is on Appendix 181, when she was asked when did these incidents occur, she's talking about the bathroom incidents. These incidents occurred, it didn't happen often, but within, well, not recently, maybe like two years ago or less, but it didn't happen like . . . this was in the course of the years, the twelve times, but it didn't happen like back-to-back or anything like that, but it did happen. If you read on, I think on that very page or the next page, she goes on to say she's asked specifically when was the last time, and she said, in the second half of 2013, which would have been after her complaint to JGB in April of 13. It does say that latter part of 2013. To follow up on Judge Lynch's question, do we know whether this page was presented to the district court in the summary judgment? Is there a record of that? All I have is what was . . . this is from the district court's file and it's all I have. All I have is what was presented to the district court because that's all Ms. McLeod ever got, so that's part of the summary judgment record that JGB submitted. Are you representing the district court had that page I just read from? Yes, yes. It came from the district court? Yes, it came from the district court's record, yes. When you say that, what do you mean though? Do you mean it was on the district court docket sheet somehow or . . . It was part of the summary judgment papers that were submitted. It was an exhibit to JGB's summary judgment papers. There's one other thing I just want to mention regarding the state and city law claims, which are discussed in the brief. Five days ago, last Friday on March 24th, the Southern District of New York revised its Pro Se Employment Discrimination form complaint. I just learned this last night. The revised form makes a number of things more clear, including the fact that would not really be obvious to a pro se plaintiff that you could have city and state claims at the same time as federal claims. Because it just came to our attention last night, we intend to submit a Rule 28J letter about it, but I wanted, just in the interest of candor, to mention it here because I believe it further supports our argument that the form, which is a potentially ever-changing thing, should not triumph over the substance of the factual allegations of a pro se plaintiff's complaint. Thank you, Ms. Cohn. Thank you. You've reserved two minutes for rebuttal. Yes, Your Honor. Mr. Shaw. Good morning, and may it please the Court. My name is Ravindra Shaw from the law firm of Jackson Lewis PC. On behalf of the Defendant LGI Services, formerly known as the Jewish Guild for the Blind, the plaintiff has granted summary judgment in this case on plaintiff's sex harassment claim. The sex harassment claim is limited to the plaintiff's verbal comments. That's confirmed in three different places in the record. It's in her EEOC intake questionnaire when they're asked, when she's asked, what is the basis for your discrimination claim? She says it's verbal, mental, and sexual harassment. It's confirmed in two different other places in her deposition when she's asked. What does mental and sexual harassment mean? Well, I think what she's indicating, first and foremost, is that her claim is about verbal harassment. Why do you say that? First and foremost, if I say it's verbal, physical, and mental, that's three things. Okay. If she says verbal, mental, and sexual, I'm not sure what those things all mean, but to Well, if there's any ambiguity about that, Judge, I think it's clarified during her deposition when I asked her, are you making any sex discrimination claims? She says, my claim is for verbal sexual harassment, and that's in the record in the appellee's appendix. Incidents aren't discrimination. Well, I also asked her, is all of the conduct that you're complaining about on Mr. Duttoner's part verbal in nature? She said that's correct. She limited her claim to verbal harassment. So it's undisputed that all of the plaintiff's verbal comments in this case occurred between 2005 and 2011. Why did she put the stuff about the bathroom in her complaint, and why did you ask her about it at her deposition if it has nothing to do with the case? Because she inserted numerous things in her two written complaints that were submitted to human resources and that were attached to her complaint in this case. There are 28 paragraphs in the March 14, 2013 complaint, and there are seven paragraphs in the March 15, 2013 complaint. And I needed to ask her about each and every one of them to determine which of these are sex-based incidents and which ones are not. And certainly she complained about a lot of different things, and I think this was a generalized grievance in large respects. And so when the district court reviewed that entire complaint, and the district court had the entire deposition transcript testimony where I reviewed all 35 paragraphs of these two written complaints before it, when I reviewed these incidents with her and I presented that to the district court, the district court properly concluded that the vast majority of these incidents were not sex-related. And that's where the bathroom incident falls as well. There's nothing on the face of this incident to indicate that it's sex-based in nature. There's no indication in the record that she went into the bathroom, that he went into the bathroom, because she was in there. I asked her during her deposition, he went into the bathroom to use the urinal each time. Is that correct? She said that was correct. So what you really have is... That's in fact what he did do. That's what he did do. She knows what's in his mind, as opposed, right? But he didn't do anything. He didn't say anything to her. He didn't, there's no reason to believe that he went in there because she was in there. For all we know, he went in there just to address his personal needs. There's no reason to think that he did anything untoward, you know, untoward with respect to her while she was doing her job. The conduct was not directed at her in any way. Is there a dispute as to the number of times that it occurred? She certainly testified that it occurred about 12 times over the course of the years. Does that seem a little odd or at least something that needs to be explored? I don't think so, Your Honor, because if a person goes to the bathroom once or twice a day and, you know, and this is occurring over the course of eight or ten years, I don't think it's that, I don't think it's so unusual. You know, it depends on, I suppose, the layout of the facility. If there's only one or two bathrooms, certainly there was another bathroom on another floor, but perhaps he didn't know. But, you know, it doesn't really matter because all we know is that this is conduct about a male supervisor going to the bathroom that he is entitled to do, to use a urinal, irrespective of whether the plaintiff was there or not. And there's nothing about that conduct that's sex-based. Was he told not to do it at one point? There's nothing in the record to that effect except the plaintiff's testimony, which I'm not sure where she got her information from. And so that's the bathroom incident. And our position is that it's not sex-based and it's not related to her verbal comments. I mean, suppose he walked into the women's bathroom. That would be a different matter, Your Honor. I mean, he just had to go. And that was the nearest bathroom. What says he went there because there's a woman in there? But once she's in there and once he's in there and there is a woman in there and he proceeds to urinate in her presence, what else is necessary to indicate that this is sex-based? Well, I think that's a different situation and that's not with the facts that we have here. But if he went into the ladies' room, clearly there would be a reason to think that perhaps he was going in there because she was in there. So it's not a question of why he goes in there. I mean, people go into the men's room pretty much for the purpose of using the facilities, of course. But what happens once she's there and he proceeds to do what he needs to do in her presence rather than excusing himself, going to another bathroom, asking if she can leave or doing something else so that he doesn't urinate in her presence? What the case law says is, asks, is the conduct based on the plaintiff's sex? And there's no reason to believe that him using a urinal in a bathroom has anything to do with the plaintiff's sex. What is the inference that arises from these facts to suggest that? We submit that there is none. There's no indication that his genitals were visible to her in this. Suppose they were. Would that change the matter? Let's say there's just no partitions by the urinals. So he's not like flashing her particularly, but in the circumstances, what he's doing is visible to her. Would that be a problem? That would be no problem because he's just urinating because he has to urinate and not in order to... He didn't decide to go in there, although I don't know how we know that, because she was there. I think there's no evidence that he did anything like that, that he exposed himself to her, that he invaded her personal space. I think those facts might change the analysis and suggest that the incident was somehow obscene or lewd. Why isn't this just a jury question? That is to say, at a trial, he could perfectly well say, look, I didn't think it was a problem. There's a partition. It's no big deal. No offense intended. And the jury could say, yeah, this is not really some kind of harassment. Because the case law says that the standard is, was the conduct in any way obscene or lewd or sexually suggestive? And there's nothing on these facts to suggest that. You don't think so? I don't. And even if the conduct... Are reasonable minds differing or am I unreasonable? Well certainly... Feel free to tell me I'm unreasonable. Well certainly, even if the conduct was somehow sex-based, it's not related to the verbal conduct in any way. I'll give you that. And it didn't occur very many times. Why does it have to be related to the verbal conduct? If he makes suggestive remarks to her on one occasion about being a stripper, if that's the correct interpretation, I'm not sure it is. But suppose, that's the allegation. And on some other occasion, he exposes himself. And on some other occasion, he sends around to the entire office a dirty joke. Those things are not the same. But they are all, allegedly, indications of making her workplace uncomfortable. Why isn't that enough relationship if he does three different types of things that each make her position as a woman in this office uncomfortable? Well, I think that's not going to satisfy the standard of whether there's an abusive or hostile work environment. The case law clearly says that Title VII does not impose a general civility code on the workplace. Her mere discomfort does not get her to a trial, does not establish that the conduct is severe or pervasive. She admitted that none of the conduct was physically threatening. She admitted that he never asked her on a date. He admitted that he never touched her in a sexual or suggestive manner. Those were the same three types of admissions that this court found compelling in Cristoforo and concluded and affirmed summary judgment on. There's nothing in this record to suggest that this conduct was sufficiently severe or pervasive. What the plaintiff has emphasized is — I understand that argument, but that's a different — I'm just trying to find out where you get this notion of related, that the pattern would all have to be the same kind of thing. I think the relatedness test relates to, in terms of this being the only timely conduct, whether it relates back to the untimely verbal comments. And that's my point, that those two things are different. She has narrowed her claim to the verbal comments, and that's what she's emphasized. And you know, if anything, I think that the fact that she minimized how often these bathroom incidents occurred by saying, it didn't happen that often, it didn't happen back-to-back or anything like that, gives you some indication of how big a deal she thought these were. Thank you for all the — I'll rest on my brief on the other points. Thank you very much, Mr. Shaw. Thank you, Your Honors. Let me address a couple of the points that Mr. Shaw and the panel made. First of all, the bathroom incidents, the record reveals, including particularly JGB's own internal investigation memos, that the bathroom incidents were a primary focus of Ms. McLeod's internal complaint. And indeed, this is the part that was still going on when she went and complained. So it's clearly part of what triggered her to finally go to HR when she did. As far as whether or not the conduct was sex-based, to ask whether he went into the bathroom because she was a woman asks the wrong question. He should not have gone into that bathroom because there was a woman in it, and that was JGB's policy. There was another bathroom he was supposed to use, and there's no evidence that anyone other than him had a problem with that. The policy you just mentioned? Well, I'm sorry. I didn't mean formal policy. I mean that he was told not to use the bathroom when she was there. And it's not only her testimony, Your Honor. Where is that in the record? Well, it's in her testimony, but also if you look on page 350 of JGB's appendix in their report of their investigation, one — I can't remember whether it's Ms. Dersh or the other person here. My colleague is handing it to me. Number two, there was also a bathroom issue in which Don came in when Easter was in there with a client while Don was told not to do that anymore. So there is at least sufficient evidence in the record to infer. And remember, they're asking you to make all kinds of inferences about why he went in there. Maybe it was an emergency, there wasn't any place else for him to go. You can't do that. This is summary judgment. Inferences are supposed to be made in her favor, not in theirs. And no one else seems to have had a problem not using the bathroom when she was in there. I see that my time is coming to a close, so unless the panel has more questions, I'll stop. Thank you. Thank you. Thank you both. We'll reserve decision in this case.